IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TERRY LEE CLIFTON,

    Petitioner,

v.                                        No.     1:11-cv-01347-JDB-egb

JOE EASTERLING,

    Respondent.

---

ORDER GRANTING PETITIONER'S MOTION FOR SUMMARY JUDGMENT

---

This is a habeas corpus proceeding brought by a state prisoner, Terry Lee Clifton, pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 1.) An amended petition ("Petition") was filed April 13, 2015. (D.E. 64-1.) The Petition does not challenge the underlying criminal conviction but instead arises from the decision of the Tennessee Parole Board to revoke Petitioner's parole following a hearing conducted on March 31, 2011. (*Id.* at ¶ 41.) The hearing, which lasted approximately 45 minutes, was conducted by Hearing Office Shirley Williams. (*Id.* at ¶ 28.) The only other person present at the proceeding besides Williams and Clifton was Parole Officer Gina Rinks, who was not Clifton's parole officer. (D.E. 78 at 13.)

After his revocation, Clifton timely filed a petition for a common-law writ of certiorari in the Chancery Court in Davidson County, Tennessee. (D.E. 64-1 at ¶ 44.) The Chancery Court clerk rejected his filing, however, due to outstanding unpaid court costs. (*Id.*) When Petitioner attempted to appeal that decision to the Tennessee Court of Appeals, the appeal was denied on the same basis. (*Id.* at ¶ 45.) Clifton subsequently filed a petition for habeas corpus contesting

1

his parole revocation in the United States District Court for the Middle District of Tennessee, which was transferred *sua sponte* to this Court. (*Id.* at ¶¶ 47-48.) Respondent successfully moved to dismiss, arguing that Petitioner procedurally defaulted his claims because he did not timely file his appeal and failed to establish the "cause" and "prejudice" required to excuse the default. (*Id.* at ¶ 47.) The Sixth Circuit reversed, finding that the claims were not procedurally defaulted because Tennessee courts could not constitutionally require all outstanding costs to be paid in full before permitting an inmate to file a habeas petition. (*Id.* at ¶ 48; *see Clifton v. Carpenter*, 775 F.3d 760 (6th Cir. 2014)). The appellate court then remanded the case with instructions that it be considered on the merits. *Clifton*, 775 F.3d at 768. Before the Court is Clifton's motion for summary judgment on the Petition pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*Law*

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court is to "view facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party." *JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 578 (6th Cir. 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). It is not to "weigh evidence, assess credibility of witnesses, or determine the truth of matters in dispute." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the motion is

properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). The nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* A court must grant summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23.

As petitioner filed his habeas application subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir. 2008); *Hester v. Ludwick*, 2010 WL 4102676, at *4-5 (W.D. Mich. Apr. 14, 2010). The AEDPA "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Wilkins v. Timmerman–Cooper*, 512 F.3d 768, 774 (6th Cir. 2008). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Waddington v. Sarausad*, 129 S. Ct. 823 (2009).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The section's 'contrary to' and 'unreasonable application' clauses possess independent meaning. *Bell*, 535 U.S. at 694. "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Id.* A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). Furthermore, a district court may consider only the "clearly established" holdings—not dicta—of the Supreme Court. *Williams*, 529 U.S. at 412; *Wilson*, 515 F.3d at 691; *Ross v. Petro*, 515 F.3d 653, 660 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 906 (2009). The court may not consider decisions of lower federal courts in determining whether the

state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings. 28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Jaradat v. Williams*, 591 F.3d 863, 864–65 (6th Cir. 2010); *Mills v. Cason*, 572 F.3d 246, 250 (6th Cir.2009). Although this petition does not seek review of a criminal conviction, based on precedent, it is nevertheless clear that the provisions of AEDPA apply. *See Hester*, 2010 WL 4102676, at *5 (applying the provisions of AEDPA to review a parole revocation challenge). In *Timmerman-Cooper*, the Sixth Circuit reviewed a district court decision dismissing a habeas corpus petition challenging the petitioner's parole revocation. 512 F.3d at 768. The court determined that all provisions of AEDPA apply, including that habeas corpus relief is available only if the last reasoned decision of the state courts was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *Id.* at 774.

*Analysis*

Petitioner's claim is that his parole was revoked in violation of due process, thus invoking § 2254(d). (D.E. 64-1.) In *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), the United States Supreme Court held "that the liberty of a parolee, although indeterminate, includes many

5

of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others." The liberty of the parolee "is valuable and must be seen as within the protection of the Fourteenth Amendment." *Id.* Although the Court acknowledged that it could not "write a code of procedure" for the states regarding parole revocation proceedings, it was entitled to establish "the minimum requirements of due process." *Id.* While "the process should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial," the minimum requirements include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.

In a standard habeas case when a state prisoner appeals his parole revocation, a district court examines the direct review conducted by the state court to determine if its ruling was contrary to or an unreasonable application of the Supreme Court's holdings in *Morrissey* and its progeny. *See Hester*, 2010 WL 4102676, at *8; *see also Wilkins*, 512 F.3d at 774. That review, however, is not possible in the instant matter. As discussed *supra*, the clerk of the Chancery Court rejected Petitioner's filing, thus no state court has reviewed the Parole Board's decision in light of the dictates of *Morrissey*. As the Sixth Circuit has mandated the consideration of the constitutional merits of Petitioner's claim, *see Clifton*, 775 F.3d at 768, this Court will examine the revocation hearing and decision in the light of the established Supreme Court precedent.

Clifton asserts that five of the six *Morrissey* requirements were not satisfied during his parole revocation. (D.E. 75 at 22.) Clifton does not contend that Hearing Officer Williams

6

failed to provide a "neutral and detached" hearing. (*Id.*) As such, the Court will examine whether the revocation hearing complied with the other five minimum requirements the Supreme Court established in *Morrissey*. *See* 408 U.S. at 489.

(1) Written Notice of the Claimed Violations of Parole

On July 23, 2010, the Board of Parole issued the following parole violation warrant for Petitioner's arrest: "Count 1: Offender engaged in Intimidating and Threatening Behavior in Madison County, TN from March – July 2010. Narrative: Confidential information was received from public officials concerning threatening behaviors conducted by the offender." (D.E. 75 at 4.) Upon learning of the arrest warrant, Clifton voluntarily turned himself in to law enforcement officials. (*Id.*) On August 10, 2010, Petitioner waived his right to a preliminary hearing. (D.E. 64-1 at 24, "Exhibit D.") A revocation hearing was initially scheduled for September 21, 2010, but Clifton requested a continuance in order to retain counsel and requested discovery. (*Id.* at ¶ 24.) On October 12, 2010, he filed motions with the Board of Paroles seeking written discovery of the evidence against him. (*Id.* at ¶ 25.) The final revocation hearing was held on March 31, 2011. (D.E. 64-1 at ¶ 28.) It is undisputed that Petitioner never received copies of any of the evidence that was presented against him during this hearing. (*Id.*; *see* D.E. 78 at ¶ 33.) Respondent contends that because Clifton was verbally reprimanded for allegations of threatening behavior ten days before the parole violation warrant was issued and because he waived his preliminary hearing, "he can establish no due process violation concerning the parole violation report and the written notice of the charge."[1] (D.E. 80 at 2.) Respondent does not

---

[1] Although Clifton did waive his preliminary hearing, Respondent points to no legal authority that states such a waiver means a parolee is not entitled to adequate notice of the charge.

7

dispute, however, that the written notice received by Petitioner did not contain any detailed information of the allegations.

The Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974), discussed certain procedural due process guarantees afforded to parolees facing revocation that were dictated by *Morrissey*. In *Wolff*, the Court explained that "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Id.* at 564. The Court cautioned that even if the charges had been "discussed orally . . . somewhat in advance of the hearing" with the parolee, sometimes "further investigation takes place which may reshape the nature of the charges or the evidence relied upon. In those instances, it would appear that the [parolee] first receives notice of the actual charges at the time of the hearing." *Id.* To not do so would undermine the purpose of the written notice as outlined by the Supreme Court. *Id.*

The instant matter is analogous to what the *Wolff* Court cautioned against. Although Petitioner did receive a verbal reprimand for allegedly threatening behavior before the parole revocation warrant was issued, the file of confidential evidence relied upon by the hearing officer contained information that was received afterwards. The content of the written notice of the charge was vague and specifically noted that the public officials involved relied on "confidential information," which served as the basis of the allegations against Clifton. (D.E. 75 at 4.) Even though Clifton had previously been reprimanded, the written notice provided no details of what charges he actually faced and thus, did not permit him the ability to prepare for his defense. Indeed, during the hearing, Clifton specifically told Hearing Officer Williams that he had "plenty of questions" about the charges against him. (D.E. 70, recording 3, at 9:25.) The Court

8

concludes that the written notice was insufficient under due process requirements established in *Morrissey* to allow Petitioner the ability to prepare a defense.

(2) Disclosure to the Parolee of Evidence Against Him

The Court in *Morrissey* established that due process requires "disclosure to the parolee of [the] evidence against him." *Morrissey*, 408 U.S. at 488. This requirement was "intended to assure that the finding of a parole violation will be based on verified facts." *Strader v. Carlton*, 2012 WL 876873, at *3 (E.D. Tenn. Mar. 14, 2012). During the revocation hearing, "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Morrissey*, 408 U.S. at 488. "This hearing . . . must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.*

It is undisputed that the only evidence offered by Officer Rinks to support the parole violation charge was the "confidential statement" of an undisclosed complainant, as well as a "statement of some activities going on" that Rinks indicated were already in the Board's possession. (D.E. 78 at ¶ 32.) Respondent concedes that at no point was Clifton given copies of any of this evidence, despite the fact that he requested these materials in a discovery motion. (*Id.* at ¶¶ 33-34.) Although Respondent contends that Clifton was aware of the allegations from his verbal reprimand, the record reflects that the evidence relied upon by the Hearing Officer and the Board to revoke his parole was never disclosed. (*Id.*) Further, at one point during the hearing, Hearing Officer Williams took a short recess in order to consider "something from the [G]overnor's office regarding [the] case." (*Id.* at ¶ 35.) Respondent does not contest that Petitioner was also not provided a copy of this additional information. (*Id.* at ¶ 36.)

9

In the instant matter, Petitioner did not have a fair opportunity to prepare for the hearing or demonstrate that he did not violate the conditions of his parole because he was never afforded the ability to cross-examine or question the evidence against him. In fact, he never even knew of the evidence. When asked about the evidence, Officer Rinks only cited to the confidential file previously given to the hearing officer without disclosing its nature or its multiple sources. (D.E. 70, recording 3, 13:09-27.) The entire proof used against Petitioner was undisclosed. (*Id.* at 14:50.) Hearing Officer Williams then solely considered the evidence. (*Id.* at 13:27-14:50.) At the conclusion, Williams stated that she would recommend to the Board that it sustain the alleged violation based "upon the *confidential* testimony" she was provided. (D.E. 70, recording 3, 39:36-39; *see* D.E. 78 at ¶ 37.) Accordingly, it is clear that the revocation hearing failed to satisfy the second requirement of *Morrissey*.

### (3) The Opportunity to be Heard in Person and to Present Witnesses and Documentary Evidence

During a parole revocation proceeding, "the parolee is entitled to appear and speak on his own behalf and bring documents, letters, or introduce individuals who can give information to the hearing officers." *Jenkins v. Michigan Dep't of Corr.*, No. 14-cv-11812, 2015 WL 5244420, at *2 (E.D. Mich. Sept. 8, 2015). In this case, Clifton was instructed that if he submitted subpoena requests for the revocation hearing along with a list of intended questions to the Board Chairman and the Director of the Tennessee Department of Correction's Western District, they would be issued. (*Id.* at ¶ 22.) Petitioner informed Williams that he requested the Board of Paroles subpoena Officer Bettye Patrick, who had personal knowledge of the underlying incident, along with another probation officer, but the subpoenas were never issued and no explanation was given for not doing so. (*Id.* at ¶¶ 25, 34.) These subpoenas were Clifton's attempt to present witnesses who might provide information to the hearing officer. *See Jenkins*,

10

2015 WL 5244420, at *2. However, it is apparent from the record that Petitioner was not given that opportunity. *See Morrissey*, 408 U.S. at 489.

### (4) The Right to Confront and Cross-Examine Adverse Witnesses

A parolee at a revocation hearing is "entitled to cross-examine adverse witnesses, unless the hearing body or officer specifically finds good cause for not allowing the confrontation." *Black v. Romano*, 471 U.S. 606, 612 (1985). However, the "right to confront and cross-examine adverse witness is not absolute and may be relaxed under certain circumstances." *State v. Wade*, 863 S.W.2d 406, 407 (Tenn. 1993). The Tennessee Supreme Court has stated that "the qualifying good cause language reflects the flexibility that marks [parole revocation] proceedings." *Id.* at 408. It noted, though, that "even where there is a showing of good cause [for not allowing confrontation], due process requires proof that the [evidence] is reliable." *Id.* Parole revocation hearings are subject to "minimum requirements of due process, which are less demanding than the procedural protections that normally accompany criminal trials." *United States v. Kokoski*, 435 F. App'x 472, 474 (6th Cir. 2011). Although "these requirements generally include the right to confront and cross-examine adverse witnesses, the hearing process should nonetheless be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* As these proceedings are designed to be more flexible, the use of hearsay evidence is permitted as long as it is reliable. *Id.*; *see United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998).

The Sixth Circuit has noted a number of factors that go into the reliability inquiry. *Kokoski*, 435 F. App'x at 474. "Hearsay given under oath, replete with detail, or supported by corroborating evidence has been recognized as reliable. Conversely, out-of-court statements reflecting an adversarial relationship with the accused, or containing multiple layers of hearsay,

11

have been recognized as unreliable." *Id.*; *see also United States v. Moncivais*, 492 F.3d 652, 658-59 (6th Cir. 2007) (noting that the hearsay evidence in question was reliable as it was "richly detailed" and "both internally and externally consistent). Additionally, the Tennessee Court of Appeals in *Miller v. Tennessee Bd. of Paroles* cautioned that

> [t]estimony establishing the grounds for revoking a parole should be treated more rigorously because it provides the basis for depriving the parolee of his or her liberty. Rather than being merely statements of personal opinion, this testimony is being offered to prove the truth of the matters contained in it. Accordingly, the requirements for its admission must contain reasonable safeguards to ensure that the testimony is truthful and accurate.

No. 01A01-9806-CH-00293, 1999 WL 43263, at *5 (Tenn. Ct. App. Feb. 1, 1999). In *United States v. Kokoski*, the Sixth Circuit noted that the inclusion of medical reports was appropriate because they corroborated each other, included detailed accounts, and were corroborated by the petitioner himself. 435 F. App'x at 475. In addressing the inclusion of the probation officer's report and statements, the court noted that the officer "appeared at the revocation hearing, giving Kokoski the opportunity to question him about the contents of his report. Kokoski chose not to do so, presumably because he did not contest the accuracy of the relevant portions of [the] report and statements." *Id.* at 476. Furthermore, he did not object to the consideration of the report and statements. *Id.*

In the instant matter, Hearing Officer Williams stated that she found good cause to excuse the accusing witness from testifying during the proceeding due to fear of retaliation. (D.E. 78 at ¶¶ 29, 30.) Additionally, the hearing officer found good cause for the absence of Officer Patrick, as she was "out on personal leave," despite the fact that Petitioner attempted to subpoena her. (*Id.* at ¶¶ 26, 28, 30.) As discussed *supra*, Clifton attempted to subpoena officers who possessed actual knowledge of the allegations, but the subpoenas were never issued and he informed Williams of this fact. (*Id.* at ¶¶ 25, 34.)

12

Additionally, Petitioner was not given the opportunity to cross-examine anyone who had actual knowledge of the alleged incident. (*Id.* at ¶ 40.) While Tennessee courts have permitted the Board to rely on a complainant's confidential statement previously when the complainant is fearful of retaliation, *see Livingston v. State of Tennessee Bd. of Paroles*, No. M1999-01138-COA-R3-CV, 2001 WL 747643, at *10-11 (Tenn. Ct. App. July 5, 2001), the confidential file that the hearing officer reviewed contained more hearsay evidence than just the complainant's. As cautioned in *Kokoski*, "out-of-court statements reflecting an adversarial relationship with the accused, or containing multiple layers of hearsay, have been recognized as unreliable." *Kokoski*, 435 F. App'x at 474. Although she found good cause to excuse two witnesses, Williams made no finding that any of the hearsay evidence was reliable. *See Wade*, 863 S.W.2d at 408 ("[E]ven where there is a showing of good cause [for not allowing confrontation], due process requires proof that the [evidence] is reliable.") Finally, Petitioner was never given an opportunity to challenge any of the relevant portions of the evidence, despite his objection to the inclusion of it. (*See* D.E. 64-1 at ¶ 28.); *see also Kokoski*, 435 F. App'x at 476. In light of the foregoing, the Court finds that the hearing did not comport with the *Morrissey* confrontation requirement and included hearsay evidence without a proper finding of reliability.

### (5) A Written Statement by the Factfinders as to the Evidence Relied on and Reasons for Revoking Parole

The Sixth Circuit noted in *United States v. Gilbert*, when explaining the *Morrissey* requirements, that "the absence of an adequate record which would enable judicial review of the reasons for parole revocation" appeared to be "[o]f particular concern to the . . . [Supreme] Court." 990 F.3d 916, 917 (6th Cir. 1993). Indeed, the Supreme Court explained that requiring

a written statement "helps to ensure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Black*, 471 U.S. at 613-14. In *Gilbert*, the court found that since the district court delineated its findings and judgment orally on the record, this was sufficient to satisfy the requirement as "all hearings are transcribed verbatim." *Gilbert*, 990 F.3d at 917. The Sixth Circuit expounded on that principle in *United States v. Layne*, where it noted that "the record indicate[d] it evaluate[d] the contested relevant facts and considered whether the facts warranted revocation." No. 08-5406, 2009 WL 89649, at *2 (6th Cir. Jan. 14, 2009). As discussed *supra*, because "revocation hearings are more flexible than a criminal trial," hearsay may be considered only if it is proven reliable. *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991).

It is undisputed that in the instant matter there was no written statement provided by Hearing Office Williams as to the evidence relied on or the reasons for revoking parole. (*See* D.E. 80 at 4.) Although Respondent cites to *Prince v. Straub*, 78 F. App'x 440 (6th Cir. 2003), for the proposition that there was no due process violation in the parole board's failure to give written factual findings (D.E. 80 at 5), that case is distinguishable. In *Prince*, although the petitioner claimed he never received verbal or written factual findings as to the decision to revoke parole, the Sixth Circuit noted that the record indicated "that a copy of the Hearing Examiner's findings and the Parole Board's decision were mailed to Prince on October 17, 2001." 78 F. App'x at 442. Here, Respondent does not contest that Clifton was never given a written statement as to the evidence relied on. Moreover, Respondent claims that this case was one of a credibility dispute, and because the hearing officer recommended on the record that the violation allegation be sustained, it is clear she discredited Petitioner's testimony. (*Id.*)

14

Although Williams did state her decision on the record, she failed to delineate the reasons other than that it was based on the "confidential testimony" she reviewed. (D.E. 70, recording 3, 39:37.) Despite this reliance on hearsay evidence, at no point did Williams make a finding that she found the confidential evidence to be reliable. No cross-examination of that evidence was conducted because Clifton was not advised of what it contained nor did Officer Rinks testify to the veracity of it as she had no personal knowledge of the underlying events. (D.E. 78 at ¶¶ 36, 40.) As such, the Court finds that the final requirement of *Morrissey* was not satisfied.

*Conclusion*

In light of the foregoing, Petitioner's motion for summary judgment is GRANTED. The appropriate remedy for the denial of procedural due process protections in parole revocation hearings is a new hearing. *Atkins v. Marshall*, 533 F. Supp. 1324, 1329 (S.D. Ohio 1982). Thus, the State of Tennessee Board of Probation and Parole is ORDERED to conduct a parole revocation hearing within sixty days of the entry of this Order. This hearing must comply with the Fourteenth Amendment due process requirements of *Morrissey v. Brewer*, 408 U.S. 471 (1972).

IT IS SO ORDERED this 8th day of March 2016.

        s/ J. DANIEL BREEN
        CHIEF UNITED STATES DISTRICT JUDGE